IN THE UNITED STATE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | |
|---|---|
| *People ex rel.* <br> JAMES RUSSELL JOHNSON, <br>     Plaintiff, <br><br> - Vs. - <br><br> RICHARD A. MEYERS, <br>     Respondent, | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 08 C 50002 <br> ) <br> ) <br> ) <br> ) <br> ) |

**AMENDED
EMERGENCY PETITION FOR
HABEAS CORPUS RELIEF
MEMORANDUM OF LAW**

FILED

AUG 0 8 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

   This plaintiff is asserting actual innocence and wrongful imprisonment, as per two (2) illegitimately commenced, non-existant Illinois offenses, charged as Aggravated driving while drivers license is suspended or revoked prosecutions. The following facts do expressly establish how those recidivist class 4 felony sentencing enhancement statutory provisions, of the driving while license is suspended or revoked statute of the Illinois Vehicle Code, are being misused and misapplied by Illinois State personnel, against the plaintiff. The plaintiff-appellant is being wrongfully and excessively imprisoned and restrained of life and liberty without probable cause.

   Upon February 28, 2003, the plaintiff received multiple compound fractures to the right leg and ankle, which required surgery. Upon March 14, 2003, nine steel screws, two steel plates, and three steel pins, were surgically inserted into this planitff's right leg and ankle. The plaintiff was in a fully immobile, non-weight bearing, full length right leg cast until the date of June 14, 2003, at which time a non-weightbearing removable cast had been applied. The plaintiff is accused of one Class A. Misdemeanor driving while license is suspended or revoked from April 05, 2003. Case number 2003TR18823 or 2003TR18825. That case had been wrongfully enhanced into the non-existant Illinois Statutory criminal offenses of Class 4 felony Aggravated Driving While Drivers

1.

License is Suspended or Revoked. Winnebago County defectiveindictment case number: 2003CF2192. The plaintiff has a current total of *908 days* within a purported pretrial custody, and counting, awaiting trial as per those 2003 traffic charges. The plaintiff was in an illegitimate and illegal pretrial custody, for *one day*, upon April 05, 2003, as per this cause. The plaintiff was again in pretrial custody for *six days*, from June 28, 2003, until July 03, 2003, as per this cause. The plaintiff was again within pretrial custody for *640 days*, from the date of January 14, 2004, until the date of October 15, 2005, as per this cause. The plaintiff has again been arrested, and within a purported pretrial custody for *261 days* and counting, while awaiting jury trial as per those 2003 Traffic charges, from the date of November 25, 2007, through to the present date and time of this memorandum, (and counting....) There is an affidavit within the 2003TR and 2003CF traffic case files, whereas the actual driver of the motor vehicle from April 05, 2003, has come forward to testify for the plaintiff. This party has addressed the Court, upon multiple ocassions, in regard to [their] driving the motor vehicle within 2003, as is subject to those aforementioned traffic prosecutions against this plaintiff. The plaintiff's orthopedic Doctor, Dr. Steven Glasgow, is additionally willing to testify on behalf of this plaintiff as per the impossibility regarding the plaintiffdriving any motor vehicle upon April 05, 2003. Additionally a matter which has been addressed within open Court on multiple ocassions, when this plaintiff has demanded jury trial.

    The plaintiff was again accused of an additional Class A. Misdemeanor driving while license is suspended or revoked from June 15, 2006. This prosecution was commenced by complaint through the Winnebago County States Attorney's office, via the City Attorney, upon June16, 2006. Case number 2006TR030246. ( Exhibit - I. )   Upon April 20, 2007, this matter was brought before the 17th Judicial Circuit Court, on arraignment, at which time such had been before the Honorable Judge, John H. Young. The plaintiff presented an oral motion to dismiss, premised upon the fact whereas there had not been any motor vehicle, *corpus delicti*, nor had there been any mandatory motor vehicle impound, *prima facie evidence*, with which to support and sustain any prosecution or conviction regarding 2006-TR-030246, et al.  No probable cause. Judge John H.Young agreed with the plaintiff. The State requested a brief recess, at which time the plaintiff's facts were verified. When Court was reconvened, the aforementioned 2006-TR-030246, et al, Class A.Misdemeanor charge of driving while drivers license is suspended or revoked was dismissed. The honorable Judge,

John H. Young, then proceeded to enter a handwritten order thereto, at this plaintiff's express request. The State did not appeal the dismissal. ( Exhibit - II. ) Upon May 01, 2007, a sum of 327 days after the initial commencement of prosecution as per case 2006TR030246, from June 15, 2006, the driving while license is suspended or revoked, as dismissed upon April 20, 2007; The plaintiff was charged by a defective information charging instrument, as was brought before 17th Judicial Circut Court Judge, Ronald White, as a wrongfully and arbitrarily enhanced non-existant Illinois statutory criminal offenses of Class 4 felony Aggravated Driving While Drivers License is Suspended or Revoked. Additionally indicted upon May 02, 2007. Winnebago County defective indictment case number: 2007CF1671. ( Exhibit - III. ) Violating both speedy trial and compulsory joinder,as well as in direct violation of United States Constitutional provisions regarding due process, equal protection, probable cause, et al.   See: *People V. Phipps*, 2-06-0423 (Ill.App. 5-29-2008) citing *People v. Quigley*,183 Ill. 2d 1, 11. (1998)  The legislature has wide discretion to establish penalties for criminal offenses, but that discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *People v. Wright*, 194 Ill. 2d 1, 24 (2000), citing *In re K.C.*, 186 Ill.2d 542, 550 (1999). The Illinois Vehicle Code recidivist Class 4 felony sentencing enhancement provisions of Aggravated Driving while drivers license is suspended or revoked, are enunciated within Chapter 625, Act 5, Chapter 6, Article III., Section 6-303, subsection (d-3); Which states:

> " (d-3) Any person *convicted* of a fourth, fifth, sixth, seventh, eighth, or ninth violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 180 days *if* the revocation or suspension was for a violation of *Section 11-401 or 11-501 of this Code*, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of *Section 9-3 of the Criminal Code of 1961*, relating to the offense of reckless homicide, or a similar out-of-state offense, or a *statutory summary suspension under Section 11-501.1 of this Code.*"

Section 6-303(d-3) states that "any person *convicted* of a fourth, fifth, sixth, seventh, eighth, or ninth violation of this Section shall be guilty of a Class 4 felony...if..." *625 ILCS 5/6-303 (d-3)* The statutes terminology does not employ the language whereas a person can be *charged* with any committing, being accused of, or the violation thereto, or any aggravated offense. *But rather* the statute does require that the person be convicted, and that the party be *convicted of a fourth, fifth, sixth, seventh, eighth, or ninth violation*. As discussed in *Jones* and *Smith*, had the

3.

*legislature intended the enhancing offenses to include only those subsequent offenses for which a defendant was convicted*, it would have used "conviction" instead of the broader "violation." Much like the "**conviction**" language as was specifically used by the Illinois Legislature within the Illinois Vehicle Code Driving while license is suspended or revoked recidivist Class 4 felony sentencing enhancement provisions of 625 ILCS 5/6-303 (d-3). As defined in section 6-100 of the Vehicle Code, *conviction is "a final adjudication of guilty by a court of competent jurisdiction* either after a bench trial, trial by jury, plea of guilty, order of forfeiture, or default." *625 ILCS 5/6-100* (West 2006). The <u>Sheehan</u> court determined that the legislature's use of the term *"committed"* in the statute, rather than *"convicted,"* mandated a broader interpretation and included prior offenses for which the defendants successfully completed court supervision. <u>**Sheehan**</u>, 168 Ill. 2d at 306, 659 N.E.2d at 1342. In <u>*People v. Jones*</u>, 306 Ill.App. 3d 793, 802, 715 N.E.2d 256, 262-63 (1999), the court distinguished *"conviction"* from *"violation, "* .... . The <u>Smith</u> court, like the court in <u>*Jones*</u>, differentiated the terms *"conviction"* and *"violation,"* also determining that *"violation"* was broader in scope than *"conviction." <u>Smith</u>*, 345 Ill. App. 3d at 186, 802 N.E.2d at 882. The plaintiff-appellant *has not been convicted* of any eighth or ninth violation of the Illinois Vehicle Code Chapter 625, Act 5, Chapter 6, Article III.,Section 303, subsection (a), which could then allow an Illinois Court to impose any Class 4 felony sentencing pursuant to Illinois Vehicle Code recidivist enhancement provisions enunciated within Chapter 625, Act 5, Chapter 6, Article III., Section 6-303, subsection (d-3). The Illinois Supreme Court recently once again held and maintained the precedent within <u>People V. Whitfield</u>, 102985 (Ill. 4-23-2008) whereas:

> "[T]his court cannot make laws . It is authorized only to interpret them." citing <u>People V. Judd</u>, (1947), 396 Ill. 211, at 212-13, 71 N.E.2d 29("The Illinois Constitution mandates that ` [n]o branch [of government] shall exercise powers properly belonging to another.' I ll. Const. 1970, art. II, § 1"). Simply put, "this court cannot make laws." *Judd*, 396 Ill. at 212; see also <u>Henrich v. Libertyville High School</u>, 186 Ill. 2d 381, 394-95 (1998)("It is the province of the legislature to enact laws; it is the province of the courts to construe the law. Courts have no legislative powers. Courts may not enact or amend statutes".)

The plaintiff was charged pursuant to the Illinois Vehicle Code Chapter 625, Act 5, Chapter 6, Article III.,Section 303, subsection (a), as per the Class A. misdemeanor driving while drivers license is suspended or revoked. Case 2003TR18823 or 2003TR18825, as are yet pending. The 2006TR030246 driving while drivers license is suspended or revoked charge from June 15, 2006,

4.

was dismissed. Such dismissal was not appealed by the State. Any Class 4 felony statutory recidivist sentence enhancement cannot be applied until after any conviction, and only if those additional statutory prerequisite triggering provisions are present and met. That is the law, as it is clearly written by legislature within the statute. 625 ILCS 5/6-303(d-3).

The Illinois Supreme Court holds whereas, in certain circumstances, a litigant's failure to conform strictly to all of the statutory requirements meant the court lacked authority to hear and determine the statute-based action. *Belleville Toyota,* 199 Ill. 2d at 338, 770 N.E.2d at 186. This should be expressly enforced and upheld as per an Assistant States Attorney's filing of criminal charges. If the statute does not apply, it cannot be charged in an arbitrary manner solely to harass or illegally imprison, such as being perfected within the present case against the plaintiff-appellant. A matter directly supported by material documented evidence, uncontested facts, and clear language of statutory law. Additionally, the plaintiff's revocation is not pursuant to any statutory section in which any Class 4 felony sentencing enhancement would be applicable after a conviction. The plaintiff is under a lifetime revocation since August 11, 1999, pursuant to a void ab initio 1999CF1711 conviction, as should additionally be addressed. This lifetime revocation is pursuant to Illinois Vehicle Code Section 625 ILCS 5/6-205. ( Exhibit IV. )  Commonly referred to as the *corpus delicti* of the offense, **the State must prove the elements in order to get a conviction.** *People v. Lurz,* (2 Dist.2008)379 Ill. App.3d 958, 885 N.E.2d 433. citing *People v. Flores,* 41 Ill. App. 3d 96, 100 (1976); *People v. Toler,*32 Ill. App. 3d 793, 798, 799 (1975);   The Illinois Legislature created various statutes whereas the [Illinois Secretary of State] has broad authority to administer the State's laws governing the conduct of drivers on the roads, and is statutorily directed to observe, administer and enforce the provisions of the Code. As noted, this authority includes the exclusive right "to grant, issue, deny, cancel, suspend and revoke driving privileges, drivers' licenses and restricted driving permits," except as provided in section 6-206.1. In conjunction with this role, the [Illinois Secretary of State] has authority to revoke and reinstate the driving privileges of persons convicted of DUI. Effective January 1, 1986, the legislature created the statutory summary suspension law, which provided for the withdrawal of the license or privilege to operate a motor vehicle from a person convicted of DUI. The Secretary of State still retained the authority to hold

hearings and grant hardship relief or reinstatement, after a suspension or revocation imposed pursuant to its authority, and maintained exclusive authority over non-first-time DUI offenders. (Ill. Rev. Stat. 1985,ch. 95 1/2, pars. 1-203.1, 2-118.1, 6-206.1, 6-208.1, 11-501.1.) (Ill. Rev. Stat. 1985, ch. 95 1/2, pars. 6-205, 6-208.)    This Court can personally note whereas out of all the aforementioned provisions regarding suspension and revocation, only one section, *Section 11-501.1*, had been incorporated by legislature into 625 ILCS 5/6-303(d-3), et seq.,with which to allow Class 4 felony sentencing enhancement by a Court, after a party is *convicted* of a fourth, fifth, sixth, eventh, eighth, or ninth violation of this Section.  *PEOPLE v. PINE*,(1989)129 Ill.2d 88, 542 N.E.2d 711. The legislature has wide discretion to establish penalties for criminal offenses, but that discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *People v. Wright*, 194 Ill. 2d 1, 24 (2000), citing *In re K.C.*, 186 Ill. 2d 542, 550 (1999). When legislation does not affect a fundamental constitutional right, the test for determining whether it complies with substantive due process requirements is the rational basis test. *Wright*, 194 Ill. 2d at 199 Ill. 2d 440, 456 (2002), citing *People v. Lombardi*, 184 Ill.2d 462, 477(1998). When a statute is unambiguous, it must be enforced as enacted, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. [Citation.] The responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. [Citations.] Reasonable doubt is a matter of constitutional magnitude. "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court `except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."' *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004), quoting in part *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970).    When a statute is unambiguous, it must be enforced as enacted, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. [Citation.]    The responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. [Citations.] Just because an offense is charged does not automatically bestow upon such

6.

instrument any legitimacy to consequently bring it to be a valid prosecution when those statutory conditions, sections, prerequisites, elements burdens or proofs are not present to uphold and sustain such. Any defendant, however accused, should not be forced to endure negligence, indifference or utter disregard when attempting to redress those grievances in a proper manner. Within *People V. Brown*, (2 Dist.2007)371 Ill. App.3d 450; to paraphrase the Second District Appellate Court Justice McLaren's dissent, in regard to habitual criminal sentencing. By inserting the Illinois Vehicle Code Class 4 felony recidivist sentencing enhancement language therein, this same could apply in this present case and issue's at bar:

> *This is not a game of "Gotcha,"* where the trial court can impose [an Illinois Vehicle Code Class 4 felony recidivist sentencing enhancement] because defendant was not quick enough to object to the State's failure to prove its case. The [Illinois Vehicle Code Class 4 felony recidivist sentencing enhancement] statute provides very precise guidelines for its application. *People v. Glover*, 173 Ill. App. 3d 678, 685 (1988). The [Illinois Vehicle Code Class 4 felony recidivist sentencing enhancement] is not to be imposed when the requirements are not met, whether or not the defendant objects. A defendant has a fundamental right to be lawfully sentenced. *People v. Rivera*, 307 Ill. App. 3d 821, 834 (1999). It is well established that a trial court cannot impose a penalty not allowed by the sentencing statute in question, and "[a] sentence imposed without statutory authority is not subject to a defendant's forfeiture."
> *People v. Palmer*, 218 Ill. 2d 148, 154 (2006)

If ever a case called out for a plain-error analysis, this is it. This doctrine encompasses those errors that are obvious, that affect substantial rights, and that would be an affront to the integrity and reputation of the judicial system. *In re G.W.*, 357 Ill. App. 3d 1058, 1061 (2005). Clearly, such an error occurred in this case. Few rights can be more substantial than the liberty interest implicated, by those improperly charged non-existant Illinois Class 4 felony criminal offenses of the Illinois Vehicle Code recidivist sentencing enhancement provisions of the driving while license is suspended or revoked statutes bringing Illinois Citizens to be accused and imprisoned upon non-existant criminal offenses. The State's obvious failure of proof is, indeed, an affront to the integrity of the

judicial system. Such an issue cannot be allowed to stand, even if a defendant fails to point out the State's failure in the trial court.   In the instant case at bar, appeal 2-08-0505, the plaintiff-appellant discovered the multiple errors prior to conviction and is being ignored because there has not been any conviction.  Whatever happened to "innocent until proven guilty"??????  *The plaintiff-appellant states he is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged and that his freedom should not be jeopardized by improper and prejudicial conduct on the part of the prosecution.*  Citing *People v. Gregory* (1961), 22 Ill.2d 601, 177 N.E.2d 120,

Within **PEOPLE v. WELLS**, (5 Dist. 1996)279 Ill. App.3d 571, 664 N.E.2d 665 the Defendant was ordered released, after excessive and illegitimate pretrial detainment upon no proof nor probable cause, as inferred from the case law.   JUSTICE KUEHN delivered the opinion of the court:

On April 20, 1996, Norval Wells, Jr., awoke in a jail cell. His day, like every day since July of 1992, was the same. He saw the same walls, breathed the same silent air, and retired to the same cot in a small corner of the world where the State of Illinois has kept him for over 1,300 days.

We are again presented with a cry for freedom. It is a disturbing cry for it sounds today more like a cry for justice. We believed, when we earlier addressed the further pretrial imprisonment of Mr. Wells, that we might be called upon to revisit the issue. See *People v. Wells,*279 Ill. App.3d 564 (1996).

We could not, however, have anticipated what we are now presented. The release of a man charged with murder, even when the law clearly mandates it, is not an easy task. It is a most serious decision, never taken lightly. A criminal charge carries the imprimatur of decent and dedicated officials working to bring criminals to justice. We were reluctant in our initial review of this issue to order the immediate release of defendant, despite a record that supported his request for release. An absence of reasons to compel his further pretrial detention pending this appeal entitled him to release. 145 Ill.2d R. 604(a)(3); *Wells,* 279 Ill. App.3d 564.

Because the State asserted that its ability to prove the defendant's guilt was irrelevant to a request for prolonged imprisonment pending appeal; because the trial court agreed and announced that it would not consider the weight of the evidence upon which the charge was predicated; because no thought was given to the possibility that indeterminate pretrial imprisonment might rest upon a charge incapable of producing conviction; we remanded to allow the State to cure what seemed an oversight in its interpretation of the rule.

 We extended the State seven days to present some evidence to establish that the charge was not baseless and that continued confinement was justifiable. The State was given an opportunity to present reasons that *compelled* Mr. Wells' further confinement pending its appeal.

The State did not attempt to show that reasons compelled further confinement. It allowed the basis of its charge to remain obscure. The means by which it plans to convert accusation into guilt remains

a secret of the State. Its enigmatic silence on the subject endures. The State allowed seven days to pass without addressing any of our concerns. No hearing was called and no effort was made to cure the deficient record.

It remains devoid of any evidence to support the legitimacy of the charge. Nothing was presented, not one shred of evidence, to allow us to measure the likelihood of conviction at the end of defendant's years of pretrial imprisonment.

*We have already expressed our concern that the State appears to confuse its power to accuse with a power to punish. Wells, 279 Ill. App.3d at 567.* Norval Wells, Jr., stands convicted of nothing despite his pretrial detention for almost four years.

*The State, obviously intent on maintaining its hold, asks us to sanction additional lengthy pretrial imprisonment on faith that its power to accuse is enough.*

We decline the invitation to walk through the looking glass.

> " 'The Queen observes that the King's Messenger is "in prison now, being punished; and the trial doesn't even begin till next Wednesday; and of course the crime comes last of all." Perplexed, Alice asks, "Suppose he never commits the crime?" That would be all the better, wouldn't it?, the Queen replies.' "

Note, *United States v. Salerno: Pretrial Detention Seen Through the Looking Glass,* 66 N.C.L. Rev. 616 (1988), quoting L. Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell,* 56 Va. L. Rev. 371, 374-75 (1970), quoting L. Carroll, Through the Looking-Glass and What Alice Found There 88 (1902).

The right to speedy trial is fundamental with its English roots in the 1166 Assize of Clarendon and the 1215 Magna Carta. *Klopfer v. North Carolina,* 386 U.S. 213, 223-24, 18 L.Ed.2d 1, 8, 87 S.Ct. 988, 993-94 (1967). By the late thirteenth century, justices were visiting the countryside three times each year — approximately every 120 days — in an effort to bring each prisoner speedy justice. *Klopfer,* 386 U.S. at 223-24, 18 L.Ed.2d at 8, 87 S.Ct. at 993-94, quoting E. Coke, The Second Part of the Institutes of the Laws of England 43 (5th ed. 1797). The rights expressed in Supreme Court Rule 604 (a)(3) protect against potential abuse of the power to accuse and detain, when the statutes designed to guard against delays in trial do not restrain that power. 145 Ill.2d R. 604(a)(3). Normally, a pretrial prisoner cannot languish in prison awaiting trial for more than 120 days... 725 ILCS 5/103-5 (a) (West 1994). However, when the State occasions delay in trial by pursuing an interlocutory appeal, speedy trial rights are suspended. Hence, a pretrial prisoner is granted the right to release when the State appeals unless the State can show compelling reasons to override such right and continue pretrial detention. See *Wells,* 279 Ill. App.3d at 567. The interplay between the right to speedy trial, and defendant's right to release because of a lengthy delay occasioned by a State appeal, was addressed in detail in our earlier *Wells* decision. We do not find it particularly abstruse. Our earlier opinion found *nothing* in the record *to compel further pretrial imprisonment* of Mr. Wells. *Wells,* 279 Ill. App.3d at 566.

We allowed the State a week to supplement the record. We provided the State another opportunity "to show compelling reasons to continue pretrial detention and override defendant's *right to release* under Supreme Court Rule 604(a)(3)." (Emphasis added.) Wells, 279 Ill. App.3d at 570. The State did nothing to alter the record from which these findings flowed. There is additional matter of record — something we did not know two weeks ago. We will address it momentarily.

Norval Wells, Jr., imprisoned without a trial for almost four years, is still confined in the Madison County jail. The State, despite the express language of Supreme Court Rule 604(a)(3) and our application of it to the facts of this case, has taken no action to secure his release. Supreme Court Rule 604(a)(3) says that Norval Wells, Jr., shall not be held in jail or to bail. 145 Ill.2d R. 604(a)(3). The State has presented nothing to compel further pretrial imprisonment and, therefore, the law requires immediate and unconditional release.

Since we can no longer assume that the State's Attorney will comply with the law, we order him to comply. The State's Attorney of Madison County is hereby ordered to carry out his duty to the People of the State of Illinois. He must enforce the laws of this State — even those laws that protect people from use of the power entrusted to him.

We order him to secure the release of defendant, Norval Wells, Jr., during the pendency of this appeal. The State is seeking a supervisory order from our supreme court. It asked the supreme court for an emergency stay from our decision which was denied. *Acta non verba.* The State's acts clearly indicate an understanding of its duty under our earlier decision.

In its appeal to the supreme court, the State represents that release of Norval Wells, Jr., presents a danger to the physical safety of others. *Apparently, he is a danger only so long as he persists in his innocence and refuses to sanctify the State's charge by pleading guilty.*

*For some time, the State has expressed a willingness to let Mr. Wells out of jail. All the State wants in return for Mr. Wells' freedom is his admission of guilt. At the same time it invokes fear of defendant's release before the supreme court, the State dangles the keys to the Madison County jail before the defendant and offers them in exchange for his innocence. At least so far, Mr. Wells values his innocence more than he values his freedom.*

George Orwell wrote of a police state brought to perfection, where power is the only thing that counts, where official language, "Newspeak," progressively narrows the range of thought, and where "Doublethink" becomes a necessary habit of mind. The State dominates society by slogans — "War is Peace," "Freedom is Slavery," and "Ignorance is Strength." G. Orwell, 1984 (1949).

*There is something decidedly Orwellian about a prosecution in which admitted guilt can bring freedom but protestation of innocence incurs punishment. There is something decidedly wrong when pretrial detention is advanced as a matter of public safety while guilt remains in question but reunion with society is acceptable if innocence is surrendered.*

  Norval Wells, Jr., has been a pretrial prisoner in the Madison County jail for a period of time that exceeds our engagement and defeat of the Axis forces in World War II.

His life has been lost in a long yesterday, awaiting a trial that he believes will free him with his dignity intact. Tomorrow, the supreme court might grant the State's request and order him held longer.

For today, the law bestows the same freedom we all share and take for granted. He can breathe fresh air, feel the sun and the wind in his face, and go anywhere he wants. For today, at least, he is free. The State is ordered to secure his release from the Madison County jail and restore him to freedom during the time it takes for the State to process its appeal. Defendant ordered released. MAAG and CHAPMAN, JJ., concur.

At least the law and constitution are upheld somewhere in the United States, and within Illinois, and wrongfully accused and illegally imprisoned citizens are freed!!! This plaintiff had traded [his] innocence within 1999 for what was percieved as the keys to freedom. See: Void ab inition case 1999CF1711, also a subject matter which should now be addressed. If I had not plead guilty back then, I suppose I would have sat in jail for an additional 908 days, in an attempt to induce a conviction. Much like in the current cases. This plaintiff refuses to do such again. For the record.

August 7, 2008                                  *James Russell Johnson*